IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DENNIS J. ELLIOTT, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 01 C 0174 |
| LINDA R. BAKER, THOMAS McMAHON, JUDY BURKOWSKI, TOM MONAHAN, TIMOTHY BUDZ, RAYMOND WOODS, NATHAN MADDOX, ROGER FLAHAVEN, ROBERT GLOTZ, REVELEE STEWARD, MAX MARX, and TANYA CLAIRMONT, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

*Pro se* plaintiff Dennis Elliott is in the custody of the Illinois Department of Human Services (DHS) as a civil detainee under the Illinois Sexually Violent Persons Commitment Act. Elliott filed suit under 42 U.S.C. § 1983, claiming that the conditions of his confinement at the now-closed Joliet Treatment and Detention Facility violated his constitutional rights. He complains of overly restrictive and inhumane living conditions, arbitrary discipline, undue restrictions on his access to the courts, deliberate indifference to his medical needs, and lack of educational and rehabilitational programs.

Elliott filed this suit in January 2001. In June 2001, the case was transferred to another judge who was handling an earlier-filed case involving similar claims. The hope, consistent with this District's related-case rule, was

that the cases (as well as some others filed around the same time) would be disposed of together.  Things did not work out that way; the other case was disposed of on an individual basis.  In June 2005, Elliott's case was reassigned to this Court's calendar.  The Court dismissed the case in October 2006 because Elliott had not filed a status report as ordered.  In July 2007, Elliott moved to reinstate the case, alleging that he had received neither the order requiring a status report nor the order of dismissal.  The Court held an evidentiary hearing and, in September 2007, reinstated the case.

In October 2007, all of the defendants[1] moved to dismiss Elliott's amended complaint, and two of them moved for summary judgment.  Elliott responded to the motion to dismiss in February 2008, and defendants filed their reply memoranda in April 2008.  Unfortunately, the Court did a poor job in staying on top of things and is only now ruling on those motions, a delay for which the Court apologizes.

**Facts**

Elliott is a civil detainee held under the authority of the Illinois Sexually Violent Persons Commitment Act (SVPCA), 725 ILCS 207/40.  At the time he filed this suit, it appears, Elliott was still facing commitment proceedings; the Court does not know whether that is still the case.  Defendant Linda Baker was, at the relevant time, the Secretary of DHS.  The following officials were

---

[1] Defendant Liberty Behavioral Health Corp. was previously dismissed pursuant to a settlement agreement that Elliott entered into in connection with other cases in which he has appointed counsel.  *See* Order of Jan. 7, 2008.

associated with the Joliet Treatment and Detention Facility (TDF), the DHS facility where Elliott was housed at the relevant time: Thomas McMahon was the Bureau Chief; Judy Burkowski was the Associate Director; Tom Monahan was the Assistant Bureau Chief; Timothy Budz was the Facility Director; Raymond Woods was the Clinical Director; Robert Glotz was the Security Director; and Revelee Steward, Max Marx and Tanya Clairmont were security aides. Defendant Nathan Maddox is alleged to have been the Illinois Secretary of State's Assistant General Counsel. Finally, defendant Roger Flahaven is alleged to have been Illinois' Deputy Attorney General.

Elliott alleges that while serving time in prison prior to his commitment to the TDF, he was able to attend educational and vocational classes, earned two associate's degrees, and was accepted to a four-year university program. He also had a prison job assignment. Once he was transferred to DHS custody at the Joliet TDF, however, Elliott had no work or educational opportunities. Instead, the DHS offers "status points" to encourage good behavior and participation in therapy.

While in prison, Elliott had access to a law library. The Joliet TDF, he alleges, had no law library.

At the Joliet TDF, Elliott says, he was double-celled in cells that were designed for single occupants. He alleges that only white detainees were double-celled and that black and Latino detainees were granted single-cell status. Elliott also alleges that DHS had no procedure for screening cellmates

to ensure compatibility and that it housed persons already adjudicated as sexually violent with detainees who were still facing commitment proceedings.

On an unspecified date, Elliott alleges, Glotz, Marx, Steward and Clairmont revoked Elliott's "responsible living" status when he refused a double-cell assignment. He also claims those defendants locked him in his cell without due process.

Elliott also alleges that he is not confined in the least restrictive manner required by law. He contends that as a convicted prisoner, he enjoyed more rights, privileges and freedoms than he does as a civil detainee.

## Discussion

In assessing a motion to dismiss for failure to state a claim, the Court accepts the complaint's factual allegations as true. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007); *Erickson v. Pardus*, 550 U.S. 127 S. Ct. 2197, 2200 (2007). A plaintiff is not required to allege specific facts; rather, he need only give the defendants fair notice of his claim and the grounds on which it rests. *Erickson*, 127 S. Ct. at 2200 (citing *Bell Atlantic*, 127 S. Ct. 1964). In addition, a complaint like Elliott's that is filed *pro se* "'is to be liberally construed'" and is "'held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

1. **Work and educational opportunities**

Elliott was not constitutionally entitled either to a job assignment or to

4

educational opportunities at the TDF. The federal Constitution does not require state authorities to provide convicted prisoners educational, rehabilitative, or vocational opportunities. *See, e.g., Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000) (Eighth Amendment). The Court is unaware of any authority, nor does Elliott cite any, suggesting that the rules are different for civilly committed persons. In addition, Elliott does not contend that he has a liberty or property interest in such opportunities that has been created by Illinois law or otherwise. *See Higgason v. Farley*, 83 F.3d 807, 809-10 (7th Cir. 1996) (due process - liberty interest).

Elliott also alleges that he and other persons committed under the SVPCA are treated differently from persons serving prison sentences with regard to these same opportunities. The Court dismisses that claim; Elliott does not allege that such persons are similarly situated to persons committed under the SVPCA.

**2.    Absence of law library**

Elliott has failed to state a claim regarding the absence of a law library at the Joliet TDF. A prisoner claiming a denial of access to the courts must allege how the denial prejudiced him. *See, e.g., Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006); *Ortloff v. United States*, 335 F.3d 652, 656 (7th Cir. 2003). Elliott has failed to allege any such prejudice. The Court also notes that Elliott has been able to press over a dozen lawsuits in this District alone since December 2000. This tends to undermine any suggestion that he has been

5

denied meaningful access to the courts. *See, e.g., Walters v. Edgar*, 163 F.3d 430, 436 (7th Cir. 1998).

3. **Double-celling**

Elliott has no viable claim that double-celling of detainees at the TDF violates the Constitution in and of itself. There is not "some sort of one man, one cell principle lurking in the Due Process Clause of the Fifth Amendment." *Bell v. Wolfish*, 441 U.S. 520, 542 (1979); *see also, Allison v. Snyder*, 332 F.3d 1076, 1079 (7th Cir. 2003).

Elliott's allegation that DHS does not screen cellmates to ensure compatibility likewise fails to state a claim. It is true that correctional officials must take reasonable measures to ensure a prisoner's safety. *Christopher v. Buss*, 384 F.3d 879, 882 (7th Cir. 2004); *Boyce v. Moore*, 314 F.3d 884, 888 (7th Cir. 2002). *See also, Walsh v. Mellas*, 837 F.2d 789 (7th Cir. 1988) (holding, in case of prisoner who was attacked by cellmate, that prison officials' failure to screen files of inmates assigned to "investigative status" for compatibility with cellmates violated the Eighth Amendment). Unlike in *Walsh v. Mellas*, however, Elliott has not alleged that he suffered any injury or even that he was at a serious risk of such injury. There is no tort without an injury, even when the tort is a claimed violation of constitutional rights. *Niehus v. Liberio*, 973 F.2d 526, 532 (7th Cir. 1992) (collecting cases).

Elliott also contends that defendants failed to comply with an Illinois administrative regulation requiring that "detained" persons be kept separate

from "committed" persons. *See* 59 Ill. Admin. Code § 299.200. The violation of a state statute or regulation does not, however, amount to a federal constitutional violation in and of itself. *See, e.g., Whitman v. Nesic*, 368 F.3d 931, 935 n.1 (7th Cir. 2004). In any event, the regulation Elliott cites does not actually mandate separation of detainees from committed persons; rather, it says that "*[t]o the extent possible considering operational, programmatic and security needs,* detained persons shall be kept separate from committed persons." 59 Ill. Admin. Code § 299.200 (emphasis added).

Elliott's claim that cell assignments were made on a racially discriminatory basis does, however, implicate a federal constitutional right. Specifically, discrimination among prisoners on the basis of race or national origin violates the Fourteenth Amendment's Equal Protection Clause. *See, e.g., Turner v. Safley*, 482 U.S. 78, 84 (1987); *Antonelli v. Sheehan*, 81 F.3d 1422, 1433 (7th Cir. 1996). *See generally Johnson v. California*, 543 U.S. 499, 515 (2005) (characterizing alleged prison policy of placing new or transferred inmates with cellmates of the same race during their initial evaluation as "highly suspect" and therefore subject to strict scrutiny).

Defendants note that Elliott made the same claim in a later case he filed, *Elliott v. Monahan*, Case No. 06 C 1677 (N.D. Ill.). Perhaps so, but after that case was consolidated with *Elliott v. Adams*, Case No. 06 C 0296 (N.D. Ill.) (also assigned to this Court's calendar), following the appointment of counsel in those cases, the equal protection / race discrimination claim was omitted from

7

the consolidated complaint. Elliott thus may pursue the claim in the present case.

4.  **Overly restrictive environment**

Elliott maintains that the Joliet TDF was operated like a prison. "Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982). Like a pretrial detainee, a civilly committed person may not be subjected to conditions that amount to "punishment" without due process. *See, e.g., Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004). "[D]ue process requires that the conditions and duration of confinement . . . bear some reasonable relation to the purpose for which persons are committed." *Seling v. Young*, 531 U.S. 250, 265 (2001); *West v. Schwebke*, 333 F.3d 745, 748 (7th Cir. 2003).

Elliott's general contention that the TDF was a prison-like environment, however, fails to state a claim. Pretrial detainees – who are considered to be on a par with civilly committed persons for this purpose – may be subjected to prison-like conditions that advance goals such as preventing escape and assuring the safety of others. *Allison v. Snyder*, 332 F.3d 1076, 1079 (7th Cir. 2003). Indeed, the Seventh Circuit has stated that "pretrial detainees, who like civil committees may be held for security reasons but not punished, may be assigned to prisons and covered by the usual institutional rules, which are

designed to assure safety and security." *Id.*

5. **Differential treatment of civilly committed SVPCA prisoners**

Elliott also alleges that he and others committed under the SVPCA are treated differently from others who have been civilly committed. Specifically, he alleges Illinois law requires civilly committed persons to be treated in accordance with an individualized service plan, gives such persons rights relating to mail, telephone use, and visitation, and allows they to be subjected to seclusion and restraint only under certain limitations. Am. Compl. ¶ 37.

In *Hargett v. Adams*, another judge of this Court found, after a trial, that the plaintiff in that case had failed to establish an equal protection violation premised upon a claim of differential treatment of persons committed under the SVPCA as compared with those civilly committed for other reasons. *Hargett v. Adams*, No. 02 C 1456, 2005 WL 399300, at *16, *19 (N.D. Ill. Jan. 14, 2005). But *Hargett*, though filed as a putative class action, was decided on an individual basis, and thus the decision does not bar Elliott's claims as a matter of law.

In their motion to dismiss, defendants contend, as they did in *Hargett*, that persons committed under the SVPCA are committed for reasons different from those applicable to other types of civilly-committed persons. That is no doubt true, but it begs the question of whether those differences are sufficient to make the allegedly less favorable treatment of SVPCA-committed persons rational, as required to satisfy the Equal Protection Clause. Defendants make

no effort in their motion to justify the allegedly differential treatment with reference to the allegedly disparate problems of persons civilly committed for different reasons. The Court will not do defendants' work for them.[2] (The Court also notes that *Hargett* was decided based on evidence submitted at a trial; this case, despite its age, is still at the pleading stage.)

Defendants also note that Illinois law specifically excepts SVPCA detainees from the provisions of Illinois law governing the treatment of persons committed under the Illinois Mental Health and Developmental Disabilities Code. That, however, is simply another way of saying that Elliott and those like him are subjected to different treatment than persons civilly committed for other reasons; it does not justify that treatment for purposes of a claim of denial of equal protection. If the fact that a state chose to treat persons differently was enough to justify that differential treatment, the Equal Protection Clause would amount to a dead letter.

In short, Elliott is entitled to proceed on his claim of equal protection violations vis-a-vis persons committed under the Mental Health and Developmental Disabilities Act with regard to treatment for his alleged mental or psychological condition and access to the mail and telephones.

6. **Temporary room confinement**

Elliott alleges that he was summarily locked in his room and removed

---

[2] In their motion, the defendants (other than Maddox, who the Court is dismissing for other reasons) assert no defense of qualified immunity to Elliott's claim for damages for violation of his equal protection rights.

from "responsible living status" for refusing his housing assignment. Am. Compl. ¶¶ 26, 29. In a separate case in which the Court appointed counsel for Elliott, he makes claims regarding what appears to have been similar occurrences in 2005 and 2007. *Elliott v. Budz*, Case No. 06 C 296.

To state a due process claim in this regard, Elliott "must identify a right to be free from restraint that imposes atypical and significant hardship in relation to the ordinary incidents of his confinement." *Thielman v. Leean*, 282 F.3d 478, 484 (7th Cir. 2002). The Seventh Circuit has indicated that when a person confined under a statute like the SVPCA is put in isolation, at least for a significant period, he is entitled to notice and an opportunity to be heard. *West v. Schwebke*, 333 F.3d 745, 748 (7th Cir. 2003).

At the current stage of the case, the Court has insufficient information about the nature of the change in Elliott's status after he refused double-celling to conclude that he cannot prove a due process claim. For this reason, the Court declines to dismiss this particular claim.[3]

## 7. Summary regarding motion to dismiss

The Court has concluded that Elliott has stated a claim for denial of due process with regard to his placement in isolation and his change of status after he refused double-celling. He asserts that claim against defendant Glotz, Marx,

---

[3] The Court is hopeful that this particular claim can be dealt with in conjunction with the similar, though later-in-time, claims Elliott has made in Case No. 06 C 296 and for that reason will cause a copy of this decision to be sent to Elliott's appointed counsel in that case.

Steward, and Clairmont.  *See* Am. Compl. ¶¶ 28-29.

Elliott has also stated claims for denial of equal protection with regard to racially-disparate cell assignments and the alleged disparity in treatment of SVPCA detainees as contrasted to persons detained under the Mental Health and Developmental Disabilities Act.  Though Elliott does not identify with particularity any specific defendants as responsible for those claims, it is a fair inference that he alleges that these violations were caused by policies of DHS and the TDF, for which he alleges that defendants Baker, McMahon, Burkowski, Budz, Woods, Glotz, Marx and Steward were responsible.  *See* Am. Compl. ¶ 24.  Elliott does not allege any of these defendants' involvement with particularity, but civil pleading rules do not require him to do so at this stage of the case.

Defendants argue that all "official capacity" claims should be dismissed.  The Court agrees with regard to Elliott's claims for damages:  the Eleventh Amendment bars private suits for damages against the State, state agencies, and state officials in their official capacities.  *Joseph v. Board of Regents of University of Wisconsin System*, 432 F.3d 746, 748 (7th Cir. 2005).  But Elliott also seeks injunctive relief.  Though the Joliet TDF is now closed, the Court is not at this time prepared to strike the request for injunctive relief.  Elliott is entitled to the opportunity to establish that the same policies and practices of which he complains that are the subject of any non-dismissed claims remain in effect at the Rushville TDF, where Elliott was transferred after the Joliet TDF was closed.

The Court has dismissed Elliott's claims relating to the absence of work and educational opportunities and the law library, his claim that double-celling violates due process, his claim that the conditions at the TDF were overly restrictive from a due process standpoint, and his equal protection claim regarding disparate treatment vis-a-vis persons serving prison terms.

**8.   Claims against defendants Flahaven and Maddox**

In Elliott's original complaint, he alleged generally that all of the defendants were responsible for the myriad violations of constitutional and other rights he asserted. The Court dismissed the complaint and gave Elliott leave to file an amended complaint. Among other things, the Court stated:

> The plaintiff must also indicate [in his amended complaint] how each named defendant is involved in the alleged violations of his constitutional rights. . . . The complaint refers generically to "the defendants," but the court questions what involvement such individuals as the Secretary of State's Assistant General Counsel and the Illinois Attorney General would have in the operation of the sexually violent offenders program.

Order of Jan. 12, 2001 at 2. The second quoted sentence in that passage referred specifically to defendants Maddox and Flahaven.

When it came to making reference to Maddox and Flahaven in his amended complaint, Elliott attempted to "incorporate by reference" virtually the entirety of the original complaint. *See* Am. Compl. ¶ 43. With regard to the involvement of Maddox and Flahaven, Elliott said only the following:

> [P]aragraphs A through L of the Original Complaint clearly state the defendants Maddox and Flahaven, denials of the plaintiffs' [sic] constitutional rights to access to the courts, defendant Flahaven [sic], denial of the plaintiffs' [sic] deliberate

13

> indifference to a serious medical need, in that he is responsible for the authorization of emergency medical procedures by DHS for a civil detainee under the Act, and that these defendants and their respective actions and inactions are clearly set forth in the plaintiffs' [sic] Original Complaint.

*Id.*

These allegations reflect that Elliott attributes only the alleged denial of access to the courts to Maddox and that same alleged wrong, along with a claimed "deliberate indifference to a significant medical need," to Flahaven (the only defendant claimed to be involved in the alleged deliberate indifference). Because the Court has already dismissed Elliott's access-to-the-courts claim, he has no remaining claim against Maddox.

As for Flahaven, the claim of denial of access to the courts likewise does not survive, as discussed earlier. With regard to the deliberate indifference claim, the amended complaint contains no allegations regarding any particular occasion on which Elliott experienced deliberate indifference to a serious medical need. In the original complaint, Elliott referenced only a single incident: an alleged denial of treatment for a serious kidney ailment for several months in late 2000. Compl. ¶ G.5(a-h).

In support of his request for summary judgment on that claim, Flahaven submitted an affidavit in which he states he has been misidentified by Elliott as the chief of the Attorney General's Sexually Violent Persons Bureau; he has never supervised Assistant Attorneys General assigned to that Bureau; he has never had any authority or involvement with the provision of medical services

14

to persons confined under the Sexually Violent Persons Commitment Act; he had no involvement with Elliott's care, custody, or control; and he had no knowledge of any of Elliott's medical needs. See Flahaven Affid. ¶¶ 3, 4, 6, 7, 18 & 19. Elliott has provided no contrary evidence and, specifically, has provided no evidence from which a jury reasonably could find Flahaven to have been involved in the alleged denial of medical care. Flahaven is thus entitled to summary judgment. Because he is the only defendant identified in the amended complaint as responsible for the alleged denial of care, that claim has now been disposed of in its entirety.[4]

**Conclusion**

For the foregoing reasons, the Court grants the DHS defendants' motion to dismiss in part and denies it in part [#64] and terminates Elliott's "motion" in opposition [#94]. The Court dismisses Elliott's "official capacity" damages claims; his claims relating to the absence of work and educational opportunities and the law library; his claim that double-celling violates due process; his due process claim regarding the restrictive nature of the conditions at the TDF; and his equal protection claim regarding differential treatment vis-a-vis persons serving prison time. The Court declines to dismiss Elliott's due process claim against defendant Glotz, Marx, Steward, and

---

[4] The Court notes that Elliott has asserted claims regarding his kidney ailments in his complaint in Case No. 01 c 9461, in which he has appointed counsel. The Court's ruling above is not intended to address any claim or allegation Elliott is pursuing in that case.

Clairmont concerning his placement in isolation and his change of status after he refused double-celling and his equal protection claims against defendants Baker, McMahon, Burkowski, Budz, Woods, Glotz, Marx and Steward for denial of equal protection concerning racially-disparate cell assignments and disparity in treatment vis-a-vis persons confined under the Mental Health and Developmental Disabilities Act. The Court also grants defendant Flahaven's motion for summary judgment [#67]. The Clerk is directed to terminate Nathan Maddox, Roger Flahaven, and Thomas Monahan as defendants (Elliott makes no allegations against Monahan in his amended complaint).

The remaining defendants are directed to respond to the amended complaint on or before August 18, 2008. Defendants' counsel is directed to cause a copy of this decision to be hand-delivered to Elliott and to file proof of compliance on or before August 4, 2008. The case is set for a status hearing on August 27, 2008 at 9:30 a.m.

The Clerk is directed to mail a copy of this decision to Christopher Murphy of McDermott, Will & Emery, 227 West Monroe Street, Suite 4400, Chicago, IL 60606 (Elliott's counsel in Case No. 01 C 9451) and to Paula Render of Jones Day, 77 West Wacker Drive, Chicago, IL 60601 (Elliott's counsel in Case No. 06 C 296). Mr. Murphy and Ms. Render (or attorneys working with them) are requested to appear at the August 27, 2008 status in the present case to advise the Court whether any of Elliott's remaining claims in this case should be litigated in tandem with claims in the other cases or should be stayed

pending the resolution of those cases.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: July 28, 2008